IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SEAN P. DOUGHERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-1163-JCH |
| | ) |
| LEIDOS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Leidos, Inc. ("Leidos") moves for summary judgment on all counts in Plaintiff Sean Dougherty's Complaint. Plaintiff alleges Leidos harassed and discriminated against him based on his disability and sex (male), failed to accommodate his disability, and retaliated against him in violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff has no evidence whatsoever to support his claims, and Leidos is entitled to summary judgment.

**FACTS[1]**

Plaintiff began his employment with Leidos as a Network Support Specialist, working at the Defense Information System Agency ("DISA") building at Scott Air Force Base, Illinois ("SAFB"), on or about February 10, 2020, supporting Leidos' contract with DISA. SOF ¶ 4. Prior to his start date and throughout his employment, Plaintiff expressed he wanted a cybersecurity job and wanted to work remotely. *Id.* ¶ 4-5, 7, 46, 49, 62. He continued applying for other Leidos jobs while employed by Leidos. *Id.* ¶¶ 8, 26. Leidos notified and continuously reminded Plaintiff of its Internal Mobility policy stating employees should stay in their position for 12 months. *Id.* ¶¶ 6, 8,

---

[1] Leidos filed its Statement of Undisputed Material Facts contemporaneously herewith and refers to it herein as "SOF." This summary is provided for the Court's convenience.

10, 12, 27. As an exception to this policy, in April 2020, Leidos moved Plaintiff from his original Network Support Specialist role reporting to Kelly Oros to a Network Controller role reporting to Janice Richardson, after Plaintiff expressed his first position was not a good fit. *Id.* ¶¶ 11-13.

Plaintiff accepted Ms. Richardson's invitation to an "off color" Facebook group. *Id.* ¶ 14. He sent sexual jokes to Ms. Richardson on Facebook, including while he was taking time off to study for his Security+ certification. *Id.* ¶¶ 15, 19. Ms. Richardson told Plaintiff he could take up to 40 unaccrued hours of paid time off ("PTO") to study, but Plaintiff took off for four consecutive weeks and used over 55 unaccrued PTO hours, including on days after he had already passed the exam and due to personal stress and a break up with his fiancé. *Id.* ¶¶ 18, 23-25.

Plaintiff was not wearing his mask at work, which was required during the COVID-19 pandemic. *Id.* ¶¶ 28-30. A manager told him multiple times to put on his mask, and he replied, "Do I look like a dog to you?" *Id.* ¶ 30. Plaintiff also told Ms. Richardson he had been coming into work with COVID symptoms for multiple days, which was prohibited. *Id.* ¶¶ 29, 31-32. Leidos issued Plaintiff a Final Written Warning ("FWW") due to his failure to follow COVID guidelines and his repeated applications for internal positions despite the Internal Mobility policy, among other issues. *Id.* ¶¶ 35-36. After receiving the FWW, Plaintiff reported the "off color" Facebook group to Leidos, which Leidos investigated and resulted in Ms. Richardson's resignation in lieu of termination. *Id.* ¶¶ 51, 53.

After Ms. Richardson was no longer working at Leidos, Plaintiff complained that his coworkers were talking about him (without identifying who or what was said) and that he did not feel safe in the workplace (without any explanation as to how or why), and Leidos offered to move Plaintiff to another role in a different department at the same pay rate. *Id.* ¶¶ 56, 58-59, 62. However, Plaintiff thought he should be making "double or triple" the pay he was making and did

not like driving to SAFB. *Id.* ¶¶ 63-65. Plaintiff demanded a remote work position, refused to return to the office and submitted his resignation by email. *Id.* ¶¶ 61-62, 66.

During his employment, Plaintiff submitted two reasonable accommodation request forms, which asked for vague "accommodations" such as for "managers and colleagues to have patience." *Id.* ¶¶ 70, 72. He never submitted appropriate medical documentation to support his requests, and instead the notes he did submit simply said Plaintiff had a "disability" or needed "accommodations/academic adjustments in a learning environment." *Id.* ¶¶ 73-75. Thus, Leidos never received a sufficient request for an accommodation from Plaintiff.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 56(c), "[s]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010). To avoid summary judgment, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," but must instead "come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589-87 (1986)). Summary judgment should be granted where the record taken as a whole could not lead a rational trier of fact to find for the plaintiff. *Id.* Plaintiff's speculation or conjecture will not suffice. *Garavaglia v. City of St. Louis*, No. 4:20 CV 1681 CDP, 2022 WL 2915551, at *4 (E.D. Mo. July 25, 2022).

Here, viewing Plaintiff's allegations in the light most favorable to his claims, no genuine issues of material fact exist for trial, as Plaintiff fails to establish any of his claims.

**A.    Plaintiff did not experience a hostile work environment based on his sex or disability.**

To establish a *prima facie* case of hostile work environment, Plaintiff must prove (1) he is

3

a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment resulted from his membership in the protected class, and (4) the harassment affected a term, condition, or privilege of his employment. *LeGrand v. Area Resources for Community & Health Services*, 394 F.3d 1098, 1101 (8th Cir. 2005); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003). The bar for establishing a *prima facie* case is high. *Alagna v. Smithville R-II School Dist.*, 324 F.3d 975, 980 (8th Cir. 2003) ("the alleged harassment must be so severe or pervasive as to affect a term, condition, or privilege of employment."). The severity of the harassment is measured by both a subjective and an objective standard—the harassment must be hostile or abusive to the victim and to a reasonable person. *Shaver*, 350 F.3d at 720. The alleged conduct must be extreme, not merely rude or unpleasant. *LeGrand*, 394 F.3d at 1101 (citing *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)); *Shaver*, 350 F.3d at 720 ("Conduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law."). Courts consider the totality of the circumstances to determine whether the alleged conduct rises to the level of a hostile work environment, considering several factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 1102 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff complained of two separate and unrelated events as alleged sexual harassment: (1) Paula Decaney allegedly said she did not like men, and (2) Janice Richardson invited him to join a Facebook chat group that contained sexual material.[2] SOF ¶¶ 14, 39, 53. These incidents were not subjectively offensive to Plaintiff. He accepted the invitation to the Facebook group after Ms. Richardson told him it was "off color," and he told her he is "thick skinned" and does not "get

---

[2] Plaintiff has not made any specific allegations of harassment based on his disability. As such, if he is purporting to bring a claim of hostile work environment based on disability, his claim fails.

4

offended by anything." *Id.* ¶ 14. Plaintiff also sent his own sexual comments to Ms. Richardson, his supervisor, outside of the Facebook group chat, including a Facebook message saying, "Boys have penises and girls have vaginas," and the following joke:



. *Id.* ¶¶ 15, 19.

Further, the allegedly harassing conduct does not rise to the level of "severe or pervasive." Plaintiff never heard any comments about his sex (or disability) from anyone other than the one purported comment from Ms. Decaney. SOF ¶¶ 84-85. Plaintiff did not access the Facebook group, which he voluntarily joined and did not leave, to view its contents for several months of his employment until he took screenshots of the messages to send to Human Resources. *Id.* ¶¶ 14, 52. He did not report the Facebook group to Leidos until he admittedly started "collecting evidence" against Ms. Richardson because she issued him the FWW. *Id.* ¶¶ 45, 51.

Ms. Decaney's singular comment and Plaintiff's membership in the Facebook group and

5

the contents thereof did not effect a term, condition, or privilege of his employment and did not interfere with his work performance. Plaintiff cannot establish his *prima facie* case of harassment.

**B.      Leidos is entitled to the *Ellerth-Faragher* affirmative defense.**

The *Ellerth-Faragher* affirmative defense may be asserted when an employer "has taken no tangible employment action against the allegedly harassed employee." *Crawford v. BNSF Railway Co.*, 665 F.3d 978, 983 (8th Cir. 2012) (affirming summary judgment where employer promptly remedied situation after employees complained) (citing *Faragher v. Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)). An employer can establish this affirmative defense "if the employer can show that (a) it exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* (quoting *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765).

The alleged harassers did not take any tangible employment action toward Plaintiff.[3] He voluntarily resigned his employment. SOF ¶ 66. Leidos has policies to prevent harassment and discrimination and requires employees to report such harassment and discrimination. *Id.* ¶ 2-3. As soon as Plaintiff complained about the Facebook group, his access to the group was removed,[4] Leidos investigated and placed Ms. Richardson on administrative leave, and she resigned. *Id.* ¶¶ 51-53. Plaintiff never spoke to Ms. Decaney after her alleged statement that she did not like men. *Id.* ¶¶ 38-39. Leidos took all appropriate action after Plaintiff complained. It is entitled to the *Ellerth-Faragher* affirmative defense and, Plaintiff's hostile work environment claim fails.

---

[3] The FWW is not an adverse action. *Yanz v. Applebee's Int'l, Inc.*, No. 12-00699-CV-W-DGK, 2013 WL 3305400, *10 (W.D. Mo. July 1, 2013) ("A written warning . . . by itself does not constitute an adverse employment action . . ."). And, Plaintiff's allegation that Leidos did not promote him is unrelated to his claim of a hostile work environment. He does not know who made the decision not to promote him, and he asserts in his Complaint that Ms. Richardson supported and approved his application for an internal position. SOF ¶ 82; [Doc. 1-2], p. 1.

[4] Plaintiff did not have any problems with being removed from the Facebook group. SOF ¶ 52.

6

C.   **Plaintiff cannot establish his claims of sex and disability discrimination.**

To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show (1) he is a member of a protected class, (2) he met Leidos' legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination based on a protected factor. *Garavaglia v. City of St. Louis*, 2022 WL 2915551, at *4 (citing *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 773 (8th Cir. 2016)). In order to establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must show (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job (with or without a reasonable accommodation), and (3) a causal connection between an adverse employment action and the alleged disability. *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 544 (8th Cir. 2018).

If he establishes his *prima facie* case, Leidos then must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Garavaglia v. City of St. Louis*, 2022 WL 2915551, at *4; *Lipp*, 911 F.3d at 544.  If Leidos meets this burden, Plaintiff then must prove Leidos' proffered reason is not the true reason for the adverse employment action but is a pretext for discrimination. *Id.*

  1.  Failure to Train and Final Written Warning

Plaintiff alleges Leidos denied him training and issued him an unwarranted Final Written Warning.[5] These are not adverse employment actions. *Yanz v. Applebee's Int'l, Inc.*, No. 12-00699-CV-W-DGK, 2013 WL 3305400, *10 (W.D. Mo. July 1, 2013) ("A written warning . . . by itself does not constitute an adverse employment action . . .") (citing *Baucom v. Holiday Cos.*, 428

---

[5] Plaintiff testified he did not know if the alleged failure to train him was discriminatory. SOF ¶ 87. He also testified he does not know if he received the FWW because of his sex, and the FWW did not mention his sex or disability. *Id.* ¶¶ 86, 93.

7

F.3d 764, 768 (8th Cir. 2005)); *Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004) ("An employer's denial of an employee's request for more training is not, without more, an adverse employment action."). And, there is no evidence his training or FWW were related to his disability or sex. SOF ¶¶ 86-87, 93.

Network Controllers first work on commercial vendor ("CVN") tasks, which provide employees with a foundation to build their skill set before moving to other areas of work within the department. SOF ¶ 79. Employees must demonstrate they are able to handle tickets from the customer and coordinate testing between vendors and customers before being trained for IP. *Id.* Ms. Richardson explained to Plaintiff that he had not been trained in IP, as he demanded, because he had not yet demonstrated he had learned everything necessary from CVN and because they needed to train another employee to take over CVN before he moved to IP – a legitimate, nondiscriminatory reason for why he was not yet trained in IP. *Id.* ¶ 80. Then, Plaintiff quit before he could be trained in IP. *Id.* ¶¶ 66, 80. Additionally, there are legitimate, nondiscriminatory reasons for Plaintiff's FWW: applying for internal jobs despite repeated reminders about the Internal Mobility policy; failure to follow COVID guidelines; inappropriate communication with management when he was not wearing his mask; failure to follow appropriate reporting procedures when late or absent; and utilizing company time for personal activities. *Id.* ¶ 36.

2. Failure to Promote

Plaintiff alleges Leidos did not promote him. To establish a *prima facie* case of discrimination in a failure-to-promote case under Title VII, Plaintiff must show "(1) [he] is a member of a protected group; (2) [he] was qualified and applied for a promotion to an available position; (3) [he] was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. United Parcel Service, Inc.*, 643 F.3d 1081, 1086 (8th

8

Cir. 2011) (citing *Shannon v. Ford Motor Co.*, 72 F.3d 678. 682 (8th Cir. 1996)). In order for Plaintiff to establish Leidos failed to promote him on the basis of a disability, he must show "(1) he is disabled within the meaning of the ADA, (2) [Leidos] was aware of his disability, (3) [he] was otherwise qualified for the position sought, and (4) [Leidos] nonetheless failed to promote him, and such failure was based on employee's disability." *Gillette v. City of Wellston*, 2007 WL 3352470, at *2 (E.D. Mo. Nov. 8, 2007).

Each alleged incident of discrimination and each adverse employment decision—including a decision not to promote—constitutes a separate actionable "unlawful employment practice." *AMTRAK v. Morgan*, 536 U.S. 101 (2002). And, an employee must file a charge with the EEOC within 300 days of each discrete act. *Id.* Plaintiff applied for 13 internal positions after being hired by Leidos, but only one such application was within 300 days prior to the date he filed his Charge of Discrimination.[6] SOF ¶¶ 26, 67. Leidos did not hire anyone for that position to which Plaintiff applied in July 2020. *Id.* ¶ 26. Indeed, only four of the 13 positions to which Plaintiff applied were filled by Leidos, and all were filled by men.[7] *Id.* ¶ 81. And Plaintiff does not know who made the decisions not to promote him or if the reason he was not promoted was discriminatory. *Id.* ¶ 82.

Plaintiff has not pointed to any evidence suggesting his sex or disability were at all related to the decision not to promote him or that the decision makers were even aware of his sex or disability. He also has not put forth any evidence that he was qualified for the jobs to which he applied. Accordingly, Plaintiff cannot prove his claim of sex or disability discrimination on the basis of the failure to promote him.

---

[6] Plaintiff filed his Charge of Discrimination on April 29, 2021. SOF ¶ 67. Three hundred days before April 29, 2021 is July 3, 2020. Plaintiff applied for only one job after July 3, 2020. *Id.* ¶ 26.

[7] Leidos does not know the disability status of those four employees. SOF ¶ 81.

3. Constructive Discharge

To prove a constructive discharge, "an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing [him] to quit." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010) (citing *Coffman*, 141 F.3d at 1247); *Thompson v. Bi-State Development Agency*, 463 F.3d 821, 825 (8th Cir. 2006) (An employee is constructively discharged "when [his] employer deliberately renders [his] working conditions intolerable and thus forces him to quit his job."). Plaintiff must show a "reasonable person would find [his] working conditions intolerable." *Thompson*, 463 F.3d at 825.

An employer's expectation that an employee return to work, especially after the coworker the employee complained about was no longer employed, does not rise to the level of an objectively intolerable working condition. *Jackson v. Ark. Dep't of Educ.*, 272 F.3d 1020, 1027 (8th Cir. 2001). And, to be reasonable, the employer must have a reasonable opportunity to correct the problem. *Id.* "Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." *Thompson*, 463 F.3d at 825.

After Plaintiff complained about Ms. Richardson, Leidos investigated his complaints and removed her from the workplace on October 19, 2020, before she ultimately resigned in lieu of termination on October 20, 2022. SOF ¶ 53. And, after the FWW meeting, Plaintiff never saw or interacted with Ms. Decaney again. *Id.* ¶ 43. Even after Ms. Richardson was removed, Plaintiff continued to complain that his coworkers were talking about him, though he could not identify a single coworker who said anything about him or what they had said, and that he did not feel safe in the workplace, again without any explanation as to why.[8] *Id.* ¶¶ 56, 58-59, 62. Just three days

---

[8] Plaintiff's allegation that other employees were talking about him, without any support whatsoever, does not amount to intolerable working conditions. "It is well-settled in [the Eighth Circuit] that ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action." *Gagnon v. Sprint Corp.*, 284 F.3d 839, 850 (8th Cir. 2002).

10

after Ms. Richardson was removed, on October 22, 2022, Leidos offered to move Plaintiff to a different department with a different supervisor, at the same rate of pay and with the same prospects for a future career in cybersecurity. *Id.* ¶ 57. But, Plaintiff never returned to work after October 22, 2022, and submitted his resignation by email on October 27, 2022. *Id.* ¶¶ 61, 66.

When Plaintiff quit without accepting Leidos' offer to move to another position at the same pay rate, and without further discussion other than his demand to work from home[9] and his refusal to explain why he did not feel safe reporting to the DISA building, he did not give Leidos a reasonable opportunity to correct any problem he allegedly was having. SOF ¶ 62. Additionally, Plaintiff has not explained how the alleged intolerable working environment or Leidos' alleged intention to force him to quit was connected to his sex or disability. Moreover, contradicting his allegation that Leidos has an intolerable working environment, Plaintiff testified he is willing to work for Leidos again. *Id.* ¶ 95. For all of these reasons, Plaintiff cannot prove he was constructively discharged on the basis of his sex or disability.

**D.      Leidos did not fail to accommodate Plaintiff's disabilities.**

1.       <u>Plaintiff cannot establish a *prima facie* case of failure to accommodate.</u>

To prevail on a failure-to-accommodate claim, Plaintiff "must establish both a *prima facie* case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). It is the employee's job to initiate the interactive process and alert his employer of his need for an accommodation. *Id.* at 906. In order for Plaintiff to prove Leidos failed to engaged in an interactive process, he must show (1) Leidos knew about his disability, (2) he requested accommodations for his disability, (3) Leidos did not

---

[9] Plaintiff demanded Leidos give him a remote work position, which he had been trying to obtain even before he started his employment with Leidos. SOF ¶¶ 7, 46, 49, 62. Plaintiff did not like driving to SAFB every day. *Id.* ¶ 65. Plaintiff cannot cite any law suggesting Leidos must give Plaintiff a remote work position just because he wants one.

11

make a good faith effort to assist him in seeking accommodations, and (4) he could have been reasonably accommodated but for Leidos' lack of good faith. *Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (citing *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir. 2009)).

Employers are entitled to require an employee provide medical documentation sufficient to prove the employee has a condition requiring accommodation. *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). "An employer need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement. If this were not the case, every employee could claim a disability warranting special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists." *Id.* (citing *E.E.O.C. v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998)) (a note stating only that employee had a "problem" was insufficient to establish employee had a disability). Where an employee fails to submit requested medical evidence, the employer does not have a duty to engage in any further interactive process. *Allen v. Pac. Bell*, 348 F.3d 1113, 1115 (9th Cir. 2003).

Plaintiff submitted a reasonable accommodation request form on January 30, 2020.[10] SOF ¶ 70. The form itself instructed Plaintiff to submit the document to the Employee Services team with supporting medical documentation from a medical provider. *Id.* Plaintiff did not send the form to the Employee Services team or attach medical documentation at that time. *Id.* On September 4, 2020, after his Final Written Warning, Plaintiff submitted another reasonable accommodation request form. *Id.* ¶ 72. The doctors' notes Plaintiff submitted were dated January

---

[10] Plaintiff sent the form to Senior HR Specialist Rebecca Cox, after he sent her an email stating, "I don't see myself as disabled," and he said he did not need any accommodations but wanted his managers to be aware of his disability. SOF ¶ 68. Ms. Cox instructed Plaintiff to send his reasonable accommodation form to his supervisor Kelly Oros or to the Employee Services team. *Id.* ¶ 70. He did not send the form to either. *Id.* ¶ 70-71.

12

23, 2003, September 21, 2010, and May 2, 2019. *Id.* ¶ 74. The 2013 note requested Plaintiff have no time constraints on testing. *Id.* The 2010 note stated Plaintiff had been diagnosed with ADHD and a learning disorder but did not identify any recommended accommodations. *Id.* The 2019 note said Plaintiff had a "medical schedule A disability" but did not identify any specific accommodations. *Id.* Senior HR Specialist Heather Brown told Plaintiff that Leidos needed medical notes dated within one year of his accommodation request. *Id.* ¶ 73. Plaintiff provided a doctor's note dated October 21, 2022 that said, "He will require accommodations/academic adjustments in a learning environment. Specifically, he requires out of class testing and double time on exams." *Id.* ¶ 74. Plaintiff never returned to work after October 22, 2022. *Id.* ¶ 61.

None of the medical records submitted by Plaintiff supported his need for any accommodation in the workplace and instead only noted he had been diagnosed with ADHD and a learning disorder and he needed additional time for exams. *Id.* ¶ 74. The only tests Plaintiff took at Leidos were taken during orientation or during continuing education courses, and Plaintiff was able to complete those tests and classes without time constraints. *Id.* ¶ 76. The Security+ exam was administered by an outside vendor, not Leidos – thus, Leidos had no control over the amount of time Plaintiff had to take the Security+ exam. Id. ¶ 22.[11]

In his Complaint, Plaintiff says he requested to move around frequently, in addition to a standing desk and clear, easy-to-read monitors. He did not submit any medical records to substantiate a need for such accommodations. *Id.* ¶¶ 74-75. Plaintiff testified his supervisors

---

[11] Leidos allowed Plaintiff time off to study for his Security+ exam – up to 40 unaccrued PTO hours, but he took more time off without approval. SOF ¶¶ 23-25. Unlimited time off is not a "reasonable accommodation," and Plaintiff did not provide medical documentation suggesting he needed any time off at all. *Sieverding v. Humach, LLC*, No. C18-1030-LTS, 2020 WL 966579, at *12 (N.D. Iowa Feb. 27, 2020) ("An employer is not required to accommodate an employee by allowing an indefinite and unlimited leave of absence.") (citing *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008)). To the extent Plaintiff is alleging Leidos disciplined him for taking too much time off and that this is somehow disability discrimination or a failure to accommodate, Plaintiff extended his time off due to personal stress and a break-up with his fiancé, not because of his disability, and he did not return to work immediately upon completing his Security+ exam without explanation. SOF ¶¶ 21-22.

allowed him to walk around and stretch his legs. *Id.* ¶ 77. And, Ms. Richardson told Plaintiff he could move his computer monitors and zoom in on them. *Id.* ¶ 78.

Plaintiff did not provide Leidos with any medical documentation supporting his purported needs for accommodations in the workplace. Accordingly, his failure to accommodate claim fails.

        2.    <u>Plaintiff's failure to accommodate claim is time barred.</u>

An employee must file a charge of discrimination within 300 days of each alleged discriminatory act. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1058 n.3 (8th Cir. 2016). A denial of a request for reasonable accommodation is a "discrete act" of discrimination that is an "independently actionable" unlawful employment practice under the ADA. *Dick*, 826 F.3d at 1059. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). And, "an employer standing by a prior [accommodation] denial after an employee requests reconsideration neither constitutes a discrete act nor extends the filing period." *Das v. Am. Airlines, Inc.*, (N.D. Tex. Jan. 21, 2020) ("Because plaintiff began requesting the accommodations in July 2016, a charge alleging failure to accommodate was due, at the latest, by May 27, 2017, three hundred days after the last day of July 2016.").

Plaintiff submitted two reasonable accommodation request forms to Leidos – one on January 30, 2020, before his employment began, and one dated September 4, 2020. SOF ¶¶ 70, 72. Plaintiff did not file a Charge of Discrimination within 300 days of January 30, 2020. *Id.* ¶ 67. Thus, as his failure to accommodate claim relates to any accommodations sought in Plaintiff's first request form or to any reconsideration he later sought of that request, his claim fails.

**E.    Plaintiff cannot prove his retaliation claim.**

To establish a *prima facie* case of retaliation, Plaintiff must show (1) he engaged in

protected activity, (2) an adverse employment action was taken against him, and (3) a causal connection exists between the two events. *Jensen v. IOC Black Hawk Cty. Inc.*, 745 Fed. Appx. 651, 653 (8th Cir. 2018) (quoting *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016)); *Gillette*, 2017 WL 3352470, at *3 (retaliation claims are analyzed in the same manner under the ADA and Title VII). Retaliation claims must be proven according to traditional principles of "but-for causation." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)); *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016).

The *McDonnell Douglas* burden-shifting analysis applies in the context of retaliation claims. *Id.* Thus, if Plaintiff can establish a *prima facie* case, the burden shifts to Leidos to rebut the *prima facie* case with a legitimate, nonretaliatory reason for the adverse employment action. *EEOC v. Kohler Co.*, 335 F.3d 766, 772-73 (8th Cir. 2003). Following this showing, the burden shifts back to Plaintiff to establish Leidos' proffered reason was merely a pretext and the motivating reason for the adverse action was illegal retaliation. *Id.* at 773.

Plaintiff alleges that, after he reported the Facebook group to Leidos, Ms. Richardson told him he was not allowed to talk with Human Resources or Workplace Relations and tried to "dock" the time from his pay. Plaintiff talked to Human Resources or Workplace Relations on numerous occasions during his employment. SOF ¶ 89. He testified he was paid for all time spent talking to them. *Id.* ¶ 90. Further, there is no Company record reflecting that Ms. Richardson reduced Plaintiff's time or pay for any reason or indicating he was not paid for all time worked. *Id.* ¶ 91.

To the extent Plaintiff is alleging his constructive discharge was an act of retaliation, his claim fails for the same reasons addressed in Section C.3. above. Thus, there was no adverse employment action taken against Plaintiff, nor is there any causal connection between any adverse action and any protected activity, and Plaintiff's retaliation claim fails.

15

## **CONCLUSION**

Plaintiff has no evidence to support any of his claims. Leidos did not harass, discriminate against, or retaliate against Plaintiff, nor did it fail to accommodate his disabilities. Thus, the Court should grant summary judgment for Leidos on all claims.

    Respectfully submitted,

    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

    /s/ *Mallory S. Zoia*
    Eric A. Todd, #46919MO
    Mallory Stumpf Zoia,  #70377MO
    7700 Bonhomme Avenue, Suite 650
    St. Louis, MO  63105
    Telephone:  314-802-3935
    Facsimile:  314-802-3936
    eric.todd@ogletree.com
    mallory.zoia@ogletree.com

    Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

 The undersigned certifies that on the 4th day of January, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and was served via U.S. mail and electronic mail to the following:

 Sean Dougherty
 2578 Coppergate Square Drive, Unit K
 St. Louis, MO 63129
 seanpdougherty@live.com

 *Pro se* Plaintiff

          /s/ *Mallory S. Zoia*
          Attorney for Defendant