IN THE UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI EASTERN DIVISION

| | |
|---|---|
| SEAN P. DOUGHERTY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:21-cv-1163-JCH |
| LEIDOS, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S RESPONSE TO
DEFENTDANT'S MOTION FOR
SUMMARY JUDGMENT**

COME NOW Plaintiff Sean Dougherty and file his Response to Defendant Leidos, Inc.'S ("Leidos") Motion for Summary Judgment, and would respectfully show the Court as follows:

**FACTS[1]**

Plaintiff began his employment with Leidos as a Network Support Specialist, working at the Defense Information System Agency ("DISA") building at Scott Air Force Base, Illinois ("SAFB"), on or about February 10, 2020, supporting Leidos' contract with DISA. RSOF, 4. Prior to his start date and throughout his employment, Plaintiff expressed he wanted a cybersecurity job and was assured by Leidos' Principal Recruiter Marsha Barber that he would be able to apply and interview for a cybersecurity role once he obtained his Security+ Certification. RSOF, 5, 26. He continued applying for other Leidos jobs while employed by Leidos and his managers, Ms. Kelly Oros, Ms. Lindsey Liefer, and Ms. Janice Richardson encourage and supported him in doing so. RSOF, 10, 12; PSOF , i 6. While Leidos reminded Plaintiff of its Internal Mobility policy stating employees should stay in their position for 12 months, Principal Recruiter Marsha Barber stated that pursuing a new role would require

---

[1] Plaintiff filed its Response to Defendant's Statement of Undisputed Material Facts and his Statement of Undisputed Material Facts contemporaneously herewith and refers to it herein as "RSOF" and PSOF, respectively. This summary is provided for the Court's convenience.

Plaintiff's current hiring manager to approve and engage HR to approve the quick turn-around, which is further supported by Leidos' Internal Mobility Policy. RSOF, 6. Plaintiff was not informed by Leidos that submitting applications for internal positions was in violation of any Leidos policy and doing so would result in a disciplinary action. PSOF, 4. As an exception to this policy, in April 2020, Leidos moved Plaintiff from his original Network Support Specialist role reporting to Kelly Oros to a Network Controller role reporting to Janice Richardson, after Plaintiff expressed his first position was not a good fit. RSOF 11-13; Ex. K, Dougherty Decl., ¶5.

Ms. Richardson told Plaintiff he could take up to 40 unaccrued hours of paid time off ("PTO") during conversations surrounding Plaintiff's preparation for (i.e., boot camp; independent studying) and take the Security+ Certification Exam. Ex. B, Facebook Messages, PLF 000162 – PLF 000. During Plaintiff's time off to prepare for the exam, Ms. Richardson was always supportive of all time away, never indicating that it was an issue. Furthermore, she graciously submitted his time card, never indicating an issue otherwise. RSOF 24. Ex. B, Facebook Messages, PLF 000157 - PLF 000175.

In the summer of 2020, DISA required everyone working in its building to wear masks at all times, unless they were eating or drinking, or seated at their workstation. RSOF 28; PSOF 9. On or about 12 August 2020, Lindsey Leifer yelled at Plaintiff to put a mask on as a colleague approached his workstation, where he was sitting. Plaintiff did put his mask on. Plaintiff then asked Liefer, "Do I look like a dog to you?" She replied no and yelled at him again to put his mask. RSOF 28; PSOF 11.

Plaintiff explained to his supervisor, Janice Richardson, that he had to have a COVID test to see his doctor. Ms. Richardson then communicated this information to Paula DeCaney. Furthermore, on the COVID intake form completed by Ms. DeCaney, she did not indicate Plaintiff

2

was experiencing COVID symptoms. RSOF 30, 31; PSOF 12, 20.

Leidos issued Plaintiff a Final Written Warning ("FWW") citing submitting internal applications, a failure to follow to COVID guidelines, a failure to follow reporting procedure when late or absent, and extended time out for Security+ Certification Examination. Ex. A, Final Written Warning. After receiving the FWW, Plaintiff reported the "off color" Facebook group to Leidos, which Leidos investigated and resulted in Ms. Richardson's resignation in lieu of termination. RSOF 51, 52, 53. Thereafter, Ms. Richardson assigned Plaintiff to a workstation with monitors that had limited mobility [RSOF 77; PSOF 16] and tracked the amount of Plaintiff spent in the restroom and speaking with Human Resources and Workplace relations. PSOF 16.

After Ms. Richardson was no longer working at Leidos, Plaintiff still did not feel safe or comfortable in the workplace. PSOF 14. Leidos wanted to move Plaintiff to an undisclosed role reporting to Mr. Len Tyler, where he would do special projects. Mr. Tyler could not specify what his job duties would be or even where he would be seated in DISA. RSOF 56; PSOF 18. Plaintiff submitted his resignation to Leidos by email, as he felt he had no other option since he was only given the choice to accept the role with Mr. Tyler, who could never articulate what the work role duties would be. PSOF 19.

During Plaintiff's employment with Leidos, he submitted two reasonable accommodations request forms. On January 30, 2020, Plaintiff sent an email to Ms. Cox with an attached reasonable accommodation request form and stated he had completed the accommodations form to the best of his knowledge. No further communication was received from Rebecca Cox or any other Leidos employee regarding his request for disability accommodations. Plaintiff resubmitted a reasonable accommodation request to Leidos on or about 4 September 2020. Plaintiff stated the following in the communication: "Additional time to study for required certifications and learn new material. Furthermore, I would like to request my managers and colleagues to have patience when providing

3

help or direction. Also, part of ADHD is forgetfulness, so providing helpful reminders is greatly appreciated." Per the instructions from Senior Human Resources Specialist, Heather Brown, Plaintiff submitted medical documentation of his disabilities. PSOF 3.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 56(c), "[s]urnmary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D&M, L.L.C.,* 606 F.3d 513, 518 (8th Cir. 2010). To avoid summary judgment, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," but must instead "come forward with specific facts showing that there is a genuine issue for trial." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 589-87 (1986)).

Here, viewing Plaintiffs allegations in the light most favorable to his claims, there are genuine issues of material fact exist for trial, as Defendant fails to establish any of their claims.

**A.     Plaintiff experienced a hostile work environment based on his sex or disability.**

To establish a *prima facie* case of hostile work environment, Plaintiff must prove (1) he is a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment resulted from his membership in the protected class, and (4) the harassment affected a term, condition, or privilege of his employment. *LeGrand v. Area Resources for Community & Health Services,* 394 F.3d 1098, 1101 (8th Cir. 2005); *Shaver v. Independent Stave Co.,* 350 F.3d 716, 720 (8th Cir. 2003). The bar for establishing *a prima facie* case is high. *Alagna v. Smithville R-II School Dist.,* 324 F.3d 975, 980 (8th Cir. 2003) ("the alleged harassment must be so severe or pervasive as to affect a term, condition, or privilege of employment.").

4

Plaintiff reported two events as alleged sexual harassment: (1) Paula Decaney allegedly said she did not like men and accused him of not respecting women (in the presence of Ms. Ribbing, Mr. Hudson, and Ms. Richardson), and (2) Janice Richardson invited him to join a Facebook chat group that contained sexual material. RSOF 14; PSOF13. The first incident was humiliating to the Plaintiff. Regarding the second event, no employee should ever be exposed to such sexually explicit material that referenced Plaintiff's colleagues and discriminated against protected groups.

After reporting the sexually explicit Facebook group, Janice Richardson singled-out Plaintiff by assigning him a seat [RSOF 93, SOF 15] and tracked the amount of Plaintiff spent in the restroom and speaking with Human Resources and Workplace relations. PSOF 16, 17. The workstation assigned to the Plaintiff had monitors with limited mobility. Plaintiff requested a desk that allowed him to move the monitors closer to his face to accommodate his visual disability, thus interfering with his ability to perform his work. No other employees under Ms. Richardson had assigned seats. PSOF 16.

Leidos denied Plaintiff training even after he obtained the required Security+ Certificate. Initially, Ms. Richardson stated that she would start the process of getting him the required accesses to begin IP training. PSOF 9. However, on or about October 16, 2020 (after the Final Written Warning and reporting of the sexually explicit Facebook Group), when Plaintiff inquired with Ms. Richardson as to why he had not been trained to perform IP work, while other employees had before they obtained Security+ Certification (a required measure before IP work could be performed). Ms. Richardson informed Plaintiff that he had not yet demonstrated that he had learned everything necessary from CVN. She also explained that Leidos could not move him to IP training until someone else was trained to cover CVN. PSOF 9a.

Plaintiff repeatedly expressed that he did not feel safe at work because of the Final Written

5

Warning. PSOF 13. Furthermore, Plaintiff requested Human Resources to put measures in place to protect him. Human Resources and Workplace relations stated they would conduct an investigation related to the claims made in the Final Written Warning; however, the investigation carried on for several weeks and Plaintiff was never informed of the findings. PSOF 15.

Ms. Decaney's comments, Ms. Richardson sexually explicit Facebook group and the contents thereof, and Ms. Richardson's retaliatory and harassing actions toward Plaintiff interfered with his work performance.

**B.     Plaintiff can establish his claims of sex and disability discrimination.**

To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show (1) he is a member of a protected class, (2) he met Leidos' legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination based on a protected factor. *Garavaglia v. City of St. Louis,* 2022 WL 2915551, at *4 (citing *Grant v. City of Blytheville, Ark.,* 841 F.3d 767, 773 (8th Cir. 2016)). In order to establish *a prima facie* case of disability discrimination under the ADA, Plaintiff must show (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job (with or without a reasonable accommodation), and (3) a causal connection between an adverse employment action and the alleged disability. *Lipp v. Cargill Meat Sols. Corp.,* 911 F.3d 537, 544 (8th Cir. 2018).

If he establishes his *prima facie* case, Leidos then must articulate a legitimate, non- discriminatory reason for the adverse employment action. *Garavaglia v. City of St. Louis,* 2022 WL 2915551, at *4; *Lipp,* 911 F.3d at 544. If Leidos meets this burden, Plaintiff then must prove Leidos' proffered reason is not the true reason for the adverse

6

employment action but is a pretext for discrimination.

   1. Final Written Warning

Leidos issued Plaintiff an unwarranted Final Written Warning, which cited his disability (extended time out for Sec+). RSOF 16. Except for being told to put on his mask, Plaintiff had not been notified of any performance or personnel issues prior to the Final Written Warning. PSOF 13. Plaintiff has a learning disability in reading and comprehension, which requires additional time and effort to read material, learn new material, and complete exams. Furthermore, Plaintiff has ADHD, which translates into the fact that he is easily distracted – making it even more challenging to learn when there is additional stress or worries present. As a result, Plaintiff required additional time away from work to prepare for his required Security+ Certification exam. Additionally, Plaintiff kept in close contact with Ms. Richardson during his time out. She never indicated that his time out was an issue. PSOF 8.

Additionally, Leidos' Internal Mobility Policy (PR-HR-5.3) states, to be eligible for internal mobility, an employee "Should have a minimum of 12 months of good standing in their current role, unless otherwise agreed upon with current supervisor. PR-HR-5.3 does not outline consequences for applying for internal positions. Plaintiff was never informed by Leidos that submitting application for internal positions would result in a disciplinary action. PSOF 4.

Furthermore, the Final Written Warning includes additional false accusations, such as failure to COVID guidelines [PSOF 10, 11, 12, 20].

   2.     Constructive Discharge

7

To prove a constructive discharge, "an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing [him] to quit." *Alvarez v. Des Moines Bolt Supply, Inc.,* 626 F.3d 410, 418 (8th Cir. 2010) (citing *Coffman,* 141 F.3d at 1247); *Thompson v. Bi-State Development Agency,* 463 F.3d 821, 825 (8th Cir. 2006) (An employee is constructively discharged "when [his] employer deliberately renders [his] working conditions intolerable and thus forces him to quit his job."). Plaintiff must show a "reasonable person would find [his] working conditions intolerable." *Thompson,* 463 F.3d at 825.

After Ms. Richardson was no longer working at Leidos, Plaintiff still did not feel safe or comfortable in the workplace. PSOF 13. Leidos wanted to move Plaintiff to an undisclosed role reporting to Mr. Len Tyler, where he would do special projects. Mr. Tyler could not specify what his job duties would be or even where he would be seated in DISA. RSOF 56; PSOF 17. Plaintiff submitted his resignation to Leidos by email, as he felt he had no other option since he was only given the choice to accept the role with Mr. Tyler, who could never articulate what the work role duties would be. PSOF 18. No reason person would accept a position where the assigned manager could not describe role in anyway. This was not a reasonable solution to the problem.

Plaintiff communicated regularly with Workplace Relations and Human Resources. RSOF 48. They offered no other solution except to move him to the position under Mr. Tyler.

For all of these reasons, Defendant's claim that Plaintiff cannot prove he was constructively discharged fails.

**C.    Leidos did fail to accommodate Plaintiff's disabilities.**

    1.    <u>Plaintiff can establish a *prima facie* case of failure to accommodate.</u>

To prevail on a failure-to-accommodate claim, Plaintiff "must establish both *a prima*

8

*facie* case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Service, Inc.,* 794 F.3d 899, 905 (8th Cir. 2015). It is the employee's job to initiate the interactive process and alert his employer of his need for an accommodation. *Id.* at 906. In order for Plaintiff to prove Leidos failed to engaged in an interactive process, he must show (1) Leidos knew about his disability, (2) he requested accommodations for his disability, (3) Leidos did not make a good faith effort to assist him in seeking accommodations, and (4) he could have been reasonably accommodated but for Leidos' lack of good faith. *Peyton v. Fred's Stores of Arkansas, Inc.,* 561 F.3d 900, 902 (8th Cir. 2009) (citing *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 952 (8th Cir. 2009)).

On January 20, 2020, Plaintiff sent an email to Senior Human Relations Specialist Rebecca Cox indicating that he did not report that he had a disability on his application but that he had a learning and reading disability. He explained that he wanted his managers to be aware of his disability in case he needed additional time read documents. Plaintiff had been previously diagnosed with bilateral lazy eyes, spondylolisthesis, attention deficit hyperactivity disorder (ADHD), and a learning disability in reading and comprehension. Ex. E, Plaintiff Dep. 193:10-195:9; Ex. M, January 20, 2020 Email communication between Plaintiff and Rebecca Cox. PSOF 2.

On January 30, 2020, Plaintiff sent an email to Ms. Cox with an attached reasonable accommodation request form and stated he had completed the accommodations form to the best of his knowledge. No further communication was received from Rebecca Cox or any other Leidos employee regarding his request for disability accommodations. Plaintiff resubmitted a reasonable accommodation request to Leidos on or about 4 September 2020. Plaintiff stated the following in the communication: "Additional time to study for required certifications and learn new material. Furthermore, I would like to request my managers and colleagues to have patience when providing

9

help or direction. Also, part of ADHD is forgetfulness, so providing helpful reminders is greatly appreciated." Per the instructions from Senior Human Resources Specialist, Heather Brown, Plaintiff submitted medical documentation of his disabilities. PSOF 3.

During September and October 2020, Ms. Richardson placed Plaintiff at an assigned seat close in proximity to her desk.  The workstation had monitors with limited mobility. Plaintiff requested a desk that allowed him to move the monitors closer to his face to accommodate his visual disability. Ms. Richardson told Plaintiff he could move his computer monitors and zoom in on them but ignored his request change desks. RSPF 78.

Given that Plaintiff has learning disability in reading and comprehension, Leidos did not give a good faith effort to assist him in seeking accommodations by helping him understand the requirements of the accommodation request by continued follow-up.

Plaintiff's request to be reassigned to a workstation where the computer monitors had greater mobility could have been reasonably accommodated but Leidos did not make a good faith effort to accommodate his visual disability.

Accordingly, Defendant's claim that the Plaintiff cannot establish a *prima facie* case of failure to accommodate fails.

2.    <u>Plaintiff's failure to accommodate claim is not time barred.</u>

An employee must file a charge of discrimination within 300 days of each alleged discriminatory act. *Dick v. Dickinson State Univ.,* 826 F.3d 1054, 1058 n.3 (8th Cir. 2016). A denial of a request for reasonable accommodation is a "discrete act" of discrimination that is an "independently actionable" unlawful employment practice under the ADA. *Dick,* 826 F.3d at 1059. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). And, "an employer standing by a prior [accommodation] denial after an

10

employee requests reconsideration neither constitutes a discrete act nor extends the filing period." *Das v. Am. Airlines, Inc.,* (N.D. Tex. Jan. 21, 2020)

Defendant claims that Plaintiff's failure to accommodate claim is time barred. Stating the following:

> "Because plaintiff began requesting the accommodations in July 2016, a charge alleging failure to accommodate was due, at the latest, by May 27, 2017, three hundred days after the last day of July 2016.")
>
> Plaintiff submitted two reasonable accommodation request forms to Leidos - one on January 30, 2020, before his employment began, and one dated September 4, 2020. SOF ¶¶ 70, 72. Plaintiff did not file a Charge of Discrimination within 300 days of January 30, 2020. Id. ¶ 67.

However, the EEOC must meet with applicates before a Charge of Discrimination is filed. At the time Plaintiff filed with EEOC, they didn't have an available appointment until March 2021. Plaintiff was assured this would not affect his case. If further information or evidence is needed, Plaintiff can request it from the EEOC. PSOF 25.

As a result, Plaintiff's failure to accommodate claim is not time barred.

**D.      Plaintiff can prove his retaliation claim.**

To establish a *prima facie* case of retaliation, Plaintiff must show (1) he engaged in protected activity, (2) an adverse employment action was taken against him, and (3) a causal connection exists between the two events. *Jensen v. IOC Black Hawk Cty. Inc.,* 745 Fed. Appx. 651, 653 (8th Cir. 2018) (quoting *DePriest v. Milligan,* 823 F.3d 1179, 1187 (8th Cir. 2016)); *Gillette,* 2017 WL 3352470, at *3 (retaliation claims are analyzed in the same manner under the ADA and Title VII). Retaliation claims must be proven according to traditional principles of

11

"but- for causation." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013)); *Oehmke v. Medtronic, Inc.,* 844 F.3d 748, 758 (8th Cir. 2016).

Leidos issued Plaintiff a Final Written Warning ("FWW") citing submitting internal applications, a failure to follow to COVID guidelines, a failure to follow reporting procedure when late or absent, and extended time out for Security+ Certification Examination. Ex. A, Final Written Warning. After receiving the FWW, Plaintiff reported the "off color" Facebook group to Leidos, which Leidos investigated and resulted in Ms. Richardson's resignation in lieu of termination. RSOF 51, 52, 53. Thereafter, Ms. Richardson assigned Plaintiff to a workstation with monitors that had limited mobility [RSOF 77; PSOF 15] and tracked the amount of Plaintiff spent in the restroom and speaking with Human Resources and Workplace relations. PSOF 15. Furthermore, prior to reporting the Facebook group, Ms. Richardson was working to set-up Plaintiff's training requirements. PSOF 9. However, on or about October 16, 2020 (after the Final Written Warning and reporting of the sexually explicit Facebook Group), when Plaintiff inquired with Ms. Richardson as to why he had not been trained to perform IP work, while other employees had before they obtained Security+ Certification (a required measure before IP work could be performed). Ms. Richardson informed Plaintiff that he had not yet demonstrated that he had learned everything necessary from CVN. She also explained that Leidos could not move him to IP training until someone else was trained to cover CVN. PSOF 9a.

A causal connection between Plaintiff's reporting of the "off color" Facebook group to Leidos and Ms. Richardson's differential treatment of Plaintiff, including the adverse action of preventing Plaintiff from being fully trained on his work role, while other employees that were void of Security+ were being trained (a required measure before IP work could be performed).

## CONCLUSION

Plaintiff has demonstrated evidence to support his claims. Leidos did harass, discriminate against, and retaliate against Plaintiff, along with failing to accommodate his disabilities. Thus, the Court should dismiss summary judgment for Leidos on all claims.

Respectfully submitted,

/s/ Sean P. Dougherty
Plaintiff
2578 Coppergate Square Drive
St. Louis, MO 63129

By Amber R. Davis, PhD BCMAS

**CERTIFICATE OF SERVICE**

The undersigned certifies that on 03 February 2023, the foregoing was electronically filed with the Clerk of the Court using electronic mail, and was served via electronic mail to the following:

Mallory S. Zoia
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
Mallory.Zoia@olgetree.com

Attorney for Defendant

/s/ Sean P. Dougherty
Plaintiff