# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SEAN P. DOUGHERTY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cv-1163-MTS |
| LEIDOS, | ) |
| Defendant. | ) |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 4.01(E), Plaintiff submits the following uncontroverted material facts in support of its response to Defendant's Motion for Summary Judgment.

1. In January 2020, Plaintiff was interviewed by Kelly Oros, who hired him for a position at Leidos as Network Support Specialist at the Defense Information System Agency ("DISA") building at Scott Air Force Base, Illinois. This position was not a cybersecurity role but, Plaintiff was informed by Marsha Barber that he would be able to quickly transition into one once he obtained Security+ CE, a required certification for most cybersecurity roles, by applying through Leidos' internal hiring system. Ex. E, Plaintiff's Deposition ("Plaintiff Dep."), 28:15-20, 31:9-24; Offer Letter, attached hereto as Ex. L; Ex. K, Declaration of Sean Dougherty ("Dougherty Decl."), ¶ 3.

2. On January 20, 2020, Plaintiff sent an email to Senior Human Relations Specialist Rebecca Cox indicating that he did not report that he had a disability on his application but that he had a learning and reading disability. He explained that he wanted his managers to be aware of his disability in case he needed additional time read documents. Plaintiff had been previously diagnosed with bilateral lazy eyes, spondylolisthesis, attention deficit hyperactivity disorder

(ADHD), and a learning disability in reading and comprehension. Ex. E, Plaintiff Dep. 193:10-195:9; Ex. M, January 20, 2020 Email communication between Plaintiff and Rebecca Cox.

3.  On January 30, 2020, Plaintiff sent an email to Ms. Cox with an attached reasonable accommodation request form and stated he had completed the accommodations form to the best of his knowledge. No further communication was received from Rebecca Cox or any other Leidos employee regarding his request for disability accommodations. Plaintiff resubmitted a reasonable accommodation request to Leidos on or about 4 September 2020. Plaintiff stated the following in the communication: "Additional time to study for required certifications and learn new material. Furthermore, I would like to request my managers and colleagues to have patience when providing help or direction. Also, part of ADHD is forgetfulness, so providing helpful reminders is greatly appreciated." Per the instructions from Senior Human Resources Specialist, Heather Brown, Plaintiff submitted medical documentation of his disabilities. Ex. E, Plaintiff Dep. 204:7-11, 218:20-219:4; Ex. I, January 30, 2020 Email communication between Plaintiff and Rebecca Cox; Ex. K, Dougherty Decl., ¶ 20; Ex. N, ADA Accommodations Request from; Ex. M, Oct 5 Email communication between Plaintiff and Heather Brown.

4.  Leidos' Internal Mobility Policy (PR-HR-5.3) states, to be eligible for internal mobility, an employee "Should have a minimum of 12 months of good standing in their current role, unless otherwise agreed upon with current supervisor. PR-HR-5.3 does not outline consequences for applying for internal positions. Ex. P, Internal Mobility Policy. Plaintiff was never informed by Leidos that submitting application for internal positions would result in a disciplinary action. Ex. K., Dougherty Decl., ¶19.

5.  In July 2020, Plaintiff obtained his Security+ CE. Ex. Q, Plaintiff's Security + Certificate.

6.      In August 2020, Ms. Barber stated "If we are to pursue this [Plaintiff's application to cybersecurity openings with Leidos], we would need your current hiring manager to approve and would have to engage HR to approve this quick turn-around." Plaintiff's managers, Janice Richardson and Lindsey Leifer were in support of Plaintiff applying for cybersecurity roles, and Plaintiff informed Ms. Barber of such. Ms. Richardson stated she would reach out to Ms. Barber in support of Plaintiff's pursuit of a cybersecurity role. Ex. B, Facebook Messages, PLF 000192 - PLF 000193 Ex. C, August 4, 2020, Email communication between Plaintiff and Marsha Barber; Ex. R, July August, 2020, Email communication between Plaintiff and Marsha Barber, p 9-10.

7.      In May 2020, Ms. Richardson invited Plaintiff to join an "off color" Facebook group chat. She also stated that Lindsey Leifer was not part of the group because she didn't like the type of content that was shared. Ms. Richardson's husband was a member of the chat and, according to Ms. Richardson, had stated that there were 180 messages when he got off work. Plaintiff testified he did not participate in the group chat. Ex. B, Facebook Messages, PLF 000135 - PLF 000137.

8.      Plaintiff communicated regularly with Janice Richardson regarding his exam preparations and difficulty scheduling the exam due to his disability accommodations. Ex. B, Facebook Messages, PLF000158 – PLF 000171. Plaintiff was diagnosed with ADHD and a learning disability in reading and comprehension as a young child; therefore, it takes him longer to prepare for and take exams. Ex. H, Disability Documentation.  Ms. Richardson informed Plaintiff that he could take up to 40 hours of advanced paid time off for his special circumstances and, thereafter, he could take unpaid leave. Ex. B, Facebook Messages, PLF 000162, PLF 000168.

9. On or about August 2020 (before the Final Written Warning), Plaintiff inquired to Ms. Richardson why he not been trained to perform IP, the other part of his job. She informed him that since he had Security+, she would start the process of getting him the required accesses. Ex. B, Facebook Messenger Messages, PLF 000179-000180.

   a. However, on or about October 16, 2020 (after the Final Written Warning and reporting of the sexually explicit Facebook Group), when Plaintiff inquired with Ms. Richardson as to why he had not been trained to perform IP work, while other employees had before they obtained Security+ Certification (a required measure before IP work could be performed). Ms. Richardson informed Plaintiff that he had not yet demonstrated that he had learned everything necessary from CVN. She also explained that Leidos could not move him to IP training until someone else was trained to cover CVN. Ex. B, Facebook Messenger Messages, PLF 000179-000180. Ex. S, October 16, 2020, Email Communication between Plaintiff and Janice Richardson.

10. Due to the COVID-19 pandemic, Leidos required employees to wear a mask when they were within six feet of others; however, while at their workstations, they were not required to wear a mask since the stations were sufficiently spread apart. Ex. K, Dougherty Decl., ¶6.

11. On or about 12 August 2020, Lindsey Leifer yelled at Plaintiff to put a mask on as a colleague approached his workstation, where he was sitting. Plaintiff did put his mask on. Plaintiff then asked Liefer, "Do I look like a dog to you?" She replied no and yelled at him again to put his mask. Ex. E, Plaintiff Dep. 88:11-20. Ex. K, Dougherty Decl., ¶6.

12. On or about August 13, 2020, Plaintiff told Ms. Richardson via Facebook Messenger he needed a COVID test before he could go to a doctor's appointment. Via phone

conversations, Plaintiff also informed Ms. Richardson and Ms. Paula Decaney he had seasonal allergies over the course of the week and explained that his symptoms were unrelated to COVID. Ex. B, Facebook Messages with Janice Richardson, p. PLF 000195-200. Ex. K, Dougherty Decl., ¶21.

13. Plaintiff received a Final Written Warning on or about 31 August 2020. Except for being told to put on his mask, Plaintiff had not been notified of any performance or personnel issues prior to the Final Written Warning. During the meeting, Paula DeCaney stated that she wanted the Plaintiff fired, stated she didn't like me, and accused Plaintiff of not respecting women. Ex. D, Plaintiff Dep. 108:25-109:15. Ex. K, Dougherty Decl., ¶10, 21.

14. Plaintiff repeatedly expressed that he did not feel safe at work because of the Final Written Warning. Ex. F, Sept 8, 2020, Email communication to Jean Copp; Ex. T, Sept 7, 2020, Email communication to Jean Copp.

15. Plaintiff requested a meeting with Mr. Hudson, a Human Resources represented, and his attorney to discuss the adverse employment actions taken by Defendant. The meeting was rejected. As a result, Plaintiff requested Human Resources to put measures in place to protect him. Human Resources and Workplace relations stated they would conduct an investigation related to the claims made in the Final Written Warning; however, the investigation carried on for several weeks and Plaintiff was never informed of the findings. Ex. U, Sept 03, 2020, Email communication between Plaintiff and Fred Hudson; Ex. V, Sept 2020, Emails with Workplace Relations regarding the internal investigation.  Ex. K, Dougherty Decl., ¶23.

16. During September and October 2020, Ms. Richardson placed Plaintiff at an assigned seat close in proximity to her desk.  The workstation had monitors with limited mobility. Plaintiff requested a desk that allowed him to move the monitors closer to his face to accommodate his visual disability. No other employees under Ms. Richardson had assigned

seats. Ex. J Oct 15, 2020 Emails between Plaintiff and Ms. Janice Richardson. Ex. K, Dougherty Decl., ¶15. Ms. Richardson also tracked the amount of Plaintiff spent in the restroom and speaking with Human Resources and Workplace relations. Ex. K, Dougherty Decl., ¶ 24. Ex. S, October 16, 2020, Email Communication between Plaintiff and Janice Richardson.

17. Ms. Richardson kept track of the time Plaintiff got up from his desk to use the restroom and speak to Human Resources and Workplace Relations. Ex. K, Dougherty Decl., ¶ 24. Ex. S, October 16, 2020, Email Communication between Plaintiff and Janice Richardson.

18. On or about 22 October 2020, Plaintiff met with Len Tyler and Shelli Ribbing. Mr. Tyler offered Plaintiff a role in his group doing special projects but he could not specify what his job duties would be even though Plaintiff repeatedly inquired in person and during a phone conversation. Following this meeting, Plaintiff spoke with Human Resources to identify a solution. Ex. E, Plaintiff Dep. 171:16-172:14, 174:9-19. Ex. K, Dougherty Decl., ¶ 11.

19. On October 27, 2020, Plaintiff submitted his resignation to Leidos by email, as he felt he had no other option since he was only given the choice to accept the role with Mr. Tyler, who could never articulate what the work role duties would be. Ex. E, Plaintiff Dep. 171:16-172:14, 174:9-19. Ex. K, Dougherty Decl., ¶ 11.Ex. W., Plaintiff's Letter of Resignation.

20. On the COVID intake form completed by Ms. DeCaney, she did not indicate Plaintiff was experiencing COVID symptoms. Ex. X, COVID Intake Form.

21. The EEOC must meet with applicates before a Charge of Discrimination is filed. At the time I submitted my application with the EEOC, they didn't have an available appointment until March 2021. Plaintiff was assured this would not affect his case. Ex. K, Dougherty Decl., ¶25.

                                      Respectfully submitted,

                                      <u>/s/ Sean P. Dougherty</u>
                                                                            Plaintiff
                                2578 Coppergate Square Drive
                                            St. Louis, MO 63129

                                By Amber R. Davis, PhD BCMAS

**CERTIFICATE OF SERVICE**

       The undersigned certifies that on 03 February 2023, the foregoing was electronically filed with the Clerk of the Court using electronic mail, and was served via electronic mail to the following:

Mallory S. Zoia
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
Mallory.Zoia@olgetree.com

Attorney for Defendant

                                        <u>/s/ Sean P. Dougherty</u>
                                                                             Plaintiff